### W. P. COATES v. A. P. BUSH, JR.

#### Decided March 31, 1900.

1. **Evidence—Pricing of State School Land by Commissioner of the General Land Office.**

   For secondary evidence held sufficient to show that the price of certain sections of State school lands had been reduced by the Commissioner of the General Land Office from $2 per acre to $1 per acre, see the opinion.

2. **Purchase of Leased State School Lands.**

   An application to purchase, under Revised Statutes, article 4218s, State school lands already under lease to another, must show that the lease is not on record in the county where the lands lie, or that the lessee has neither a permanent supply of water thereon nor improvements thereon of the value of $200.

3. **Same—Cash Payment with Application.**

   The Commissioner of the General Land Office properly rejects an application to purchase leased State school lands where, at the time he acts on it, the applicant has not deposited with the State Treasurer one-fortieth of the purchase price; and a deposit of such cash payment after the rejection will not require that the Commissioner should then award the lands to the applicant, since the rejected application is no longer pending before him.

APPEAL from Borden. Tried below before Hon. W. R. SMITH.

*Looney & Hamner,* for appellant.

*Earnest & Shepherd,* for appellee.

HUNTER, ASSOCIATE JUSTICE.—This suit of trespass to try title was brought by appellant against appellee on October 24, 1899, in the District Court of Borden County to recover two sections of public school land lying in said county, numbers 110 and 132 of block 25, Houston & Texas Central Railroad Company. The answer was "not guilty." The case was tried by a jury, whom the court instructed to find a verdict for the defendant, which was done, and judgment was rendered accordingly. The case comes here by appeal on the statement of facts.

The record discloses that the two sections sued for were leased by the State to appellee for five years from August 1, 1896, but it does not appear that Bush had paid the first year's rental in advance, as re-

quired by the statute, nor that the lease was recorded in the county where the lands were situated. The lease was introduced in evidence, and no certificate of such record was indorsed thereon or attached thereto, and no evidence was offered on either side on this issue of record or not. It appears from the statement of facts that the lease was for ten and a half sections, but none of them are identified in any manner in the statement of facts, except the two in controversy. It furthermore appears that the appellant had previously settled upon with his family and continued to reside thereon, and had purchased section 134 of said school land from the State, and by virtue of this settlement, occupancy, and purchase he applied to the Commissioner on August 4, 1897, to purchase the two sections in controversy as leased sections which lay within a radius of five miles of his said home section, but at no time did he file with the Commissioner a certificate of the county clerk that the lease had not been recorded in his office.

These sections had, prior to 1896, been classified as dry grazing lands and appraised at $2 per acre, and both the General Land Office records and the county court records of Borden County showed such fact, except that in the county court records it appeared that the figure $1 had been written over the figure $2 of the appraised value of section 110, and the county clerk testified that in the spring of 1896 he received a letter from the Commissioner of the General Land Office notifying him that the appraised value of said sections had been reduced to $1 per acre, and that he had made the change of price on No. 110 by writing the figure 1 as aforesaid, but had neglected to make the change on 132. The letter was placed on a hook in the office where such letters were kept by him, but was then lost and could not be found. It appeared also that the Commissioner of the General Land Office, when applied to by the attorney of appellant for a copy of the notification or other record reducing the price to $1, "informed the attorney that no such record was kept in the Land Office." The attorney had seen a similar letter addressed to the county clerk of Kent County reducing the price from $2 to $1 per acre on dry grazing lands. It was signed by the stamped signature of W. L. McGaughey, who was then the Land Commissioner. We conclude from this evidence that the Commissioner of the General Land Office had reduced the price of these sections to $1 per acre, and had sent a written notification thereof to the county clerk as required by law, and that the said notice was lost, and that the Commissioner had failed to make a record of such change in his office, and that therefore the sections in controversy were for sale at $1 per acre at the time appellant made his application to purchase same.

It appears further that appellant sent up to the Commissioner with his application the affidavit and obligation required by the statute, but failed to forward to the State Treasurer one-fortieth of the price in cash ($32) as required, until September 15, 1897. This first payment remained in the State treasury to the credit of appellant on the purchase until June 13, 1899, when the same was returned to appellant. On

October 13, 1898, appellant paid $46.80 to the Treasurer, the annual interest due on the purchase November 1, 1898, and this was returned to him June 22, 1899, because the Commissioner had notified the Treasurer that appellant's application has been rejected.

It seems from the indorsements on the application that it was rejected on September 9, 1897, six days before the $32 first payment on the land was paid into the treasury, although it does not appear that it was rejected on that ground, but the indorsements on the application tend rather to prove that it was rejected because appellant failed to furnish affidavits as required by the Commissioner that the sections so applied for could be exchanged under the statute with similar sections leased by Bush, the appellee. The evidence shows that 111 and 132 are the same in the class and quality, acre by acre, and that 111 lies between appellant's home section 134 and section 110, and the proposition of appellant was that if Bush had a valid lease on 111 he would have the right to exchange 132 with Bush for 111; but it nowhere appears that Bush had 111 leased from the State.

There is but one assignment of error, and in that complaint is made of the peremptory instruction to the jury to find for defendant Bush.

The statute of 1895, under which the lease was made, provided: "All leases shall be executed under the hand and seal of the Land Commissioner and delivered to the lessee or his duly authorized agent, and such lease shall not take effect until the first annual rental is paid and such lease thereof duly filed for record in the clerk's office of the proper county." 2 Sayles' Civ. Stats., art. 4218r. But the act of 1897, which took effect on August 20, 1897, provided that all lease contracts theretofore made and which had not been recorded should be filed for record with the clerk of the proper county "within three months after this act takes effect," and further: "If not so filed for record within said time, the Commissioner of the General Land Office shall disregard said lease and award the land to any other applicant accompanying his application with the certificate of the clerk that no lease of said land is of record in his office." 2 Sayles' Civ. Stats. (1897), art. 4218s.

Now, the land must be considered as leased lands upon the market for sale, classified as dry grazing lands and appraised at $1 per acre. What, then, were the rights of appellant therein at the time he filed this suit it September, 1899? His application filed August 4, 1897, was in due form for the purchase of leased lands. He therein stated to the Commissioner that the land was leased. That meant in the General Land Office that the lease on it was on record in the county clerk's office of Borden County, for the law provided then, as it does now, that if the lease was not on record he should "accompany his application with the certificate of the clerk that no lease of said land is of record in his office." He was negotiating then with the Commissioner to purchase leased land,—leased to Bush, the appellee,—and a majority of the court think that a good application in such cases should either show that the lease was not on record, or if it was, then to show that the sections so applied

for had neither improvements thereon of the value of $200, nor a permanent natural or artificial water supply belonging to the lessee; for in such case the law allowed the settler to buy any section within the lessee's inclosure except such sections as were so improved. Rev. Stats., art. 4218s.

The Commissioner, it seems, in this case required the appellant to show by affidavits or by agreement with Bush that section 132 was similar in class and value with section 111, so that a fair exchange of sections could be made, and thus put appellant's three sections in one solid body, and Bush, it appears, denied that the exchange could be so made. This demand for affidavit or agreement with Bush was made on appellant by the Commissioner by letter dated August 13, 1897, and does not appear to have ever been complied with. The applications to purchase seem to have been rejected by the Commissioner on September 9, 1897, but it does not appear, except from inference, upon what ground. Up to this time the appellant had not deposited with the State Treasurer, as the law required, one-fortieth of the purchase price of the land. Said deposit was made, however, on the 15th day of September, six days later.

The writer is of opinion that the Commissioner had no right to reject his application to purchase upon the ground that he failed to show that the sections applied for were exchangeable with some of the lessee's sections as provided in the statute, for his right to purchase them was clear unless they were improved or watered sections as above shown. His right to exchange them with like sections held by the lessee depended upon the will of the lessee. If the sections to be exchanged are of similar class and value, and the lessee is willing to exchange, so as to place the settler's sections in a solid body, he can require the settler to fence his sections so as to separate them from from his leased sections; but if the lessee does not desire to exchange or refuses to do so within a reasonable time after the settler requests such exchange, then the settler is not required to fence his sections, but may turn such a number of his live stock into the lessee's inclosure as is proportioned to the number of acres he has therein as fixed by the statute. Rev. Stats., art. 4218s. So that this question as to whether the sections applied for can be fairly exchanged with others leased is not, in the writer's opinion, a question to be considered by the Commissioner, but only by the parties themselves after the sections have been awarded and sold to the settler.

But the order of the Commissioner rejecting the applications of appellant was correct, because the payment required by law had not then been deposited with the State Treasurer. Rev. Stats., art. 4218j. And while we do not hold that such deposit must be made at the time the application is made, we are clear that it ought to be in the treasury when the Commissioner comes to act upon the application, and unless it is then on deposit, the Commissioner should reject the bid.

It is contended, however, that the application was made good by the deposit made on September 15, 1897, and that the Commissioner should

have awarded the sections to appellant thereafter. We think not. The applications filed August 4th had been acted upon and rejected on September 9th, and were not pending before the Commissioner when the deposit was made, and a deposit without the application, affidavit, and obligation, of course, would not be sufficient.

We therefore conclude that the honorable District Court did not err by instructing a verdict for defendant Bush, and the judgment is therefore affirmed.

*Affirmed.*

Writ of error refused.